IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CARL F. HUGHES, *in his capacity as* | : | |
| *guardian for Martin J. Hughes, Jr.*, | : | |
| | : | |
| Plaintiff, | : | Case No. 05-CV-77 |
| | : | |
| v. | : | JUDGE ALGENON L. MARBLEY |
| | : | |
| DOUG WHITE, *et al.*, | : | Magistrate Judge Kemp |
| | : | |
| Defendants. | : | |

## OPINION AND ORDER

### I.  INTRODUCTION

This matter comes before the Court on the Motion of Carl F. Hughes, as guardian for

Martin J. Hughes, Jr. ("Plaintiff"), to Dismiss and for Partial Summary Judgment against

Defendant American Mutual Share Insurance Corporation ("ASI"), in its capacity as Conservator

for the United Telephone Credit Union ("UTCU").  For the following reasons, Plaintiff's

Motions are **GRANTED**.

### II.  BACKGROUND

UTCU is a state chartered credit union organized and existing under the provisions of

Chapter 1733 of the Ohio Revised Code.  As such, the credit union is a nonprofit cooperative

financial institution organized and operating for the mutual benefit and general welfare of its

members.  UTCU is subject to the supervision and regulation of the Ohio Department of

Commerce, Division of Financial Institutions ("DFI").

On July 18, 2002, DFI and the former officers and directors of UTCU, including Martin J. Hughes, Jr., his wife Natalie A. Hughes, and Daniel P. Hughes, a Hughes relative, entered into a supervisory agreement (the "Supervisory Agreement") pursuant to OHIO REV. CODE § 1733.325.  DFI found numerous instances of accounting and Internal Revenue Service regulatory noncompliance, self-dealing, inadequate investment policies, and breach of fiduciary duties by management and the UTCU board of directors.  UTCU was ordered to implement over twenty specific corrective actions.

UTCU and its board failed to implement the corrective actions specified in the Supervisory Agreement.  Additionally, DFI determined, based on ongoing examination, that on November 1, 2001, UTCU unlawfully transferred 1,742 shares of stock of the Fahey Banking Company (worth over $2 million), for no apparent consideration, to the account of Natalie Hughes at Merrill Lynch.  On May 27, 2002, six months after the transfer, Natalie Hughes issued a check to UTCU for $220,475 for the Fahey Bank stock – far less than the fair market value of the stock.  DFI concluded that this alleged unlawful stock transfer caused a dissipation of UTCU's assets and harm to the credit union's members and creditors.  Accordingly, on February 24, 2003, DFI issued the Order Appointing Conservator (the "Order"), which was signed by Acting Deputy Superintendent of Credit Unions, Kenneth A. Roberts ("Roberts").  By that Order, ASI was purportedly appointed Conservator for UTCU, and ASI claims that it was authorized to exercise all powers of a conservator pursuant to OHIO REV. CODE § 1733.361(B).

Scott O'Donnell is the Superintendent of Financial Institutions.[1]  In that capacity, O'Donnell issued an order on February 21, 2003, directing Roberts to issue the Order

---

[1] Scott O'Donnell, Doug White, and Kenneth Roberts are collectively referred to herein as the "State Defendants."

Appointing Conservator.  O'Donnell also issued ratifications of Roberts' actions on two occasions – April 29, 2004 and January 4, 2005.  Roberts has been employed as the Acting Deputy Superintendent for Credit Unions since 1995.

On February 26, 2003, within thirty days of the Order Appointing Conservator, Martin Hughes authorized Squire & Pierre-Louise, LLC ("Hughes' law firm" or "the law firm") to file an action, purportedly on behalf of UTCU, to challenge the Order Appointing Conservator pursuant to OHIO REV. CODE § 1733.361(A)(2).  *United Tel. Credit Union v. Roberts*, No. 03-CVH-02-2278 (Franklin Cty. Ct. Comm. Pleas).  UTCU subsequently dismissed that action without prejudice.  On May 20, 2004, over a year later, Squire & Pierre-Louis, LLC filed another action under OHIO REV. CODE § 1733.361(A)(2), which was authorized by Natalie Hughes. *United Tel. Credit Union v. Roberts*, No. 04-CVH-055436 (Franklin Cty. Ct. Comm. Pleas).

On May 28, 2003, soon after the conservatorship was established, DFI instituted proceedings to remove Martin Hughes as a director and officer of UTCU pursuant to OHIO REV. CODE § 1733.181.  Martin Hughes, however, was diagnosed as having chronic depression and dementia.  On May 9, 2003, Natalie Hughes filed an application for guardianship with the Cuyahoga County Probate Court and, ultimately, Martin Hughes' son, Carl F. Hughes, was appointed his guardian on September 25, 2003.  On August 19, 2004, Carl Hughes, on behalf of Martin Hughes, entered into a settlement agreement (the "Settlement Agreement") with DFI, consenting to Martin Hughes' removal as an officer and director of UTCU.  DFI issued its order removing Martin Hughes on September 3, 2004.

On December 12, 2003, ASI, as Conservator for UTCU, and UTCU filed an action against Martin Hughes, Natalie Hughes, and Daniel Hughes in the Court of Common Pleas of

Cuyahoga County. *Am. Mutual Share Ins. Corp. v. Hughes*, No. 03-CV-517015 (Cuyahoga Cty. Ct. Comm. Pleas). ASI asserted claims of conversion, fraud, breach of fiduciary duty, and unjust enrichment. In that action, ASI seeks to recover over $2 million in damages relating to the alleged unlawful conversion of the 1,742 shares of Fahey Bank stock and misappropriation of other credit union assets. Martin Hughes filed a motion to dismiss the action on the same grounds asserted in this motion – that ASI was not lawfully appointed Conservator of UTCU. Judge Ronald Suster of the Cuyahoga County Court of Common Pleas denied the motion to dismiss on September 2, 2004. The case remains pending and is scheduled for trial on October 24, 2005.

Since the Order Appointing Conservator, ASI has either prosecuted or been forced to defend at least eleven actions brought by, or involving, various members of the Hughes family. These actions include the following: three sexual harassment complaints filed by UTCU employees against Martin Hughes before the Ohio Civil Rights Commission; an action brought by Natalie Hughes against ASI to recover $220,000 paid for the 1,724 shares of Fahey Bank Stock, *Hughes v. Am. Mutual Share Ins. Corp.*, No. 03-CV-501541 (Cuyahoga Cty. Ct. Comm. Pleas); an action brought by Union Eye Care Center against Martin Hughes and UTCU for alleged breach of fiduciary duty and unjust enrichment, *Union Eye Care Center, Inc. v. United Tel. Credit Union, Inc.*, No. 01-CV-451192 (Cuyahoga Cty. Ct. Comm. Pleas), and a subsequent appeal, *Morgan v. Hughes*, No. 03-CA-082916 (Cuyahoga Cty. Ct. App.); Squire & Pierre-Louis, LLC's suit for attorneys fees and UTCU's counterclaim for legal malpractice, *Squire & Pierre-Louis, LLC v. United Tel. Credit Union, Inc.*, No. 054805 (Franklin Cty. Ct. Comm. Pleas); *Am. Mutual Share Ins. Corp. v. Hughes*, No. 03-CV-517015 (Cuyahoga Cty. Ct. Comm.

Pleas); *United Tel. Credit Union, Inc. v. Roberts*, No. 04-CVH-011101 (Franklin Cty. Ct. Comm. Pleas); and an action brought by ASI for declaratory judgment concerning bond claims for director dishonesty, *Am. Mutual Share Insurance Corp. v. CUMIS Ins. Society, Inc.*, No. 05-CVH-022054 (Franklin Cty. Ct. Comm. Pleas).  Most recently, the case sub judice, brought by Carl Hughes as guardian for Martin Hughes, which is based on Martin Hughes' ERISA claims for "employee benefits."

Squire & Pierre-Louis, LLC has represented UTCU in cases such as *United Tel. Credit Union, Inc. v. Roberts*, but because the law firm has represented parties adverse to the credit union, it has elected not to sue UTCU directly in the action pending before this Court, so as to avoid conflict of interest issues.  Instead, Hughes' law firm has sued ASI in its capacity as Conservator for UTCU.

Natalie Hughes was previously removed as a director of UTCU ostensibly pursuant to OHIO REV. CODE § 1733.181.  Judge Jennifer Brunner of the Franklin County Court of Common Pleas issued a Decision and Entry in *Hughes v. Ohio Dep't of Commerce*, No. 03-CVH-08-8687 (Franklin Cty. Ct. Comm. Pleas Dec. 22, 2004).  In that opinion, Judge Brunner held that Natalie Hughes had properly perfected a Section 119 appeal from the "Final Order Removing Respondent From Office And Prohibiting Further Participation."  *Id*. at 4.  Judge Brunner further concluded that the order appealed from was not a final appealable order in that the removal order was issued by the Acting Deputy Superintendent for Credit Unions, not the Superintendent of the Division of Financial Institutions.  *Id*. at 4-5. Judge Brunner's decision is presently on appeal to the Franklin County Court of Appeals, Case No. 04-APE-121386.

On December 30, 2004, Judge Brunner issued a temporary restraining order in *United Tel. Credit Union v. Roberts*, No. 04-CVH-055436 (Franklin Cty. Ct. Comm. Pleas Dec. 30, 2004), concluding that "Defendant's actions in appointing the conservator, the proposed intervenor, may be subject to the law of the earlier cited decision of this court in that the conservatorship may, in the final instance, be adjudicated to be null and void." *Id*. at 2.

The temporary restraining order expired by its terms on January 13, 2005.  The *Roberts* court declined UTCU's motion to extend the temporary restraining order.  Additionally, Squire & Pierre-Louis, LLC withdrew the motion for preliminary injunction in that case and the state court cancelled a hearing scheduled for January 31, 2005.  On July 26, 2005, Judge Guy Reece of the Franklin County Court of Common Pleas granted in part and denied in part UTCU's motion for partial summary judgment against Roberts, filed on January 4, 2005; granted in part and denied in part UTCU's motion for summary judgment against ASI, or alternatively, to dismiss ASI from the state court action, filed on January 12, 2005; and denied Roberts' cross motion for summary judgment filed on January 18, 2005.  *United Tel. Credit Union, Inc. v. Roberts*, No. 04-CVH-055436 (Franklin Cty. Ct. Comm. Pleas July 26, 2005).  Specifically, the court held that the superintendent of credit unions may not delegate the authority to appoint a conservator, because that authority is not expressly conferred by statute, and therefore, Roberts, in his capacity as Acting Deputy Superintendent for Credit Unions, did not have statutory authority to appoint ASI.  *Id*. at 8-9.  The state court also held that the O'Donnell's subsequent ratifications of Roberts' Order Appointing Conservator were of no effect since the court held that, in the first instance, Roberts lacked the statutory authority to sign the Order Appointing

Conservator, and it determined that such order was "void on its face, has no legal effect[,] and is incapable of being ratified." *Id*. at 9.

In the present matter, Plaintiff seeks a determination from this Court that because ASI was not lawfully appointed Conservator over UTCU, it cannot bring a counterclaim on behalf of UTCU. Furthermore, Plaintiff urges this Court to dismiss ASI's counterclaim in its entirety.

ASI urges this Court to deny Plaintiff's Motions on the following grounds: (1) it was lawfully appointed Conservator over UTCU, and therefore, it is empowered to assert claims against Plaintiff; (2) Plaintiff lacks standing to challenge ASI's appointment as Conservator in this case; (3) the Order Appointing Conservator is not subject to collateral attack in this proceeding; and (4) the *Pullman* and *Burford* abstention doctrines require this Court to abstain from exercising jurisdiction over a state conservatorship proceeding.

The State Defendants argue that Plaintiff's Motions should be denied because (1) Roberts possessed express statutory authority to issue the Order Appointing Conservator, which resulted in the appointment of ASI as Conservator over UTCU; (2) O'Donnell gave Roberts advance authorization to issue the Order Appointing Conservator, in addition to ratifying Roberts' appointment of ASI and other actions related to UTCU; (3) Plaintiff voluntarily consented to Roberts' authority to issue the Order Appointing Conservator when he entered into the Supervisory Agreement; and (4) Plaintiff lacks standing to challenge the validity of the Order in this Court, but even if Plaintiff has the requisite standing, the Order is not subject to collateral attack in this Court.

### III. STANDARD OF REVIEW

### A.  Motion to Dismiss

In considering a Rule 12(b)(6) motion to dismiss, a court must treat all factual allegations of the complaint, or the counterclaim, as true, and ambiguous allegations must be construed in the non-movant's favor.  *Murphy v. Sofamor Danek Group, Inc. (In re Sofamor Danek Group, Inc.)*, 123 F.3d 394, 400 (6th Cir. 1997); *May v. Nat'l Bank of Commerce*, No. 03-2112 MI/A, 2004 U.S. Dist. LEXIS 10297, at *4 (W.D. Tenn. Feb. 27, 2004).  A complaint or counterclaim should not be dismissed under Rule 12(b)(6) "'unless it appears beyond doubt that the [p]laintiff [or counter claimant] can prove no set of facts in support of his claim which would entitle him to relief.'"  *Lillard v. Shelby County Bd. of Educ.*, 76 F.3d 716, 724 (6th Cir. 1996) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)); *Ruble v. Madison Capital, Inc.*, No. 1:96 CV 1693, 1997 U.S. Dist. LEXIS 22301, at *2-3 (N.D. Ohio May 2, 1997).  Though liberal, this standard of review requires more than the bare assertion of legal conclusions.  *Allard v. Weitzman (In re DeLorean Motor Co.)*, 991 F.2d 1236, 1240 (6th Cir. 1993) (citation omitted).  A complaint or counterclaim must contain either direct or inferential allegations with respect to all the material elements necessary to sustain a recovery under some viable legal theory.  *Id*. (citations omitted); *Ruble*, 1997 U.S. Dist. LEXIS 22301, at *3.

### B.  Motion for Summary Judgment

Summary judgment is appropriate "[i]f the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c).  The movant has the burden of establishing that there are no genuine issues of material fact, which may be accomplished by demonstrating that the non-moving party

lacks evidence to support an essential element of its case.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1388–89 (6th Cir. 1993).  In response, the non-moving party must then present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339–40 (6th Cir. 1993) (citations omitted).

In evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the non-moving party.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). The Court also must interpret all reasonable inferences in the non-movant's favor.  *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (stating that the court must draw all reasonable inferences in favor of the non-moving party and must refrain from making credibility determinations or weighing the evidence).  The existence of a mere scintilla of evidence in support of the non-moving party's position will not be sufficient; however, there must be evidence from which the jury reasonably could find for the non-moving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986); *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (finding summary judgment appropriate when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party").

## IV.  ANALYSIS

### A.  The *Pullman* and *Burford* Abstention Doctrines

As a threshold matter, ASI urges this Court to abstain from exercising jurisdiction over what it describes as a state law conservatorship proceeding.  ASI premises its argument on the

abstention doctrines set forth in *Railroad Commission of Texas v. Pullman*, 312 U.S. 496 (1941) and *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943). The Court will address each doctrine in turn.

1. *Pullman* Abstention

*Pullman* abstention arises where "federal jurisdiction is invoked for a constitutional challenge to a state statute or administrative order and construction of unsettled but relevant state law by the adjudicatory process would obviate a constitutional decision or alter the nature of the constitutional issue." *Lansing Mercy Ambulance Serv., Inc. v. Palmer*, No. 5:93:CV:25, 1993 U.S. Dist. LEXIS 12373, at *4 (W.D. Mich. July 22, 1993) (citation omitted). In order for this Court to abstain under *Pullman*, it must find that (1) there is "an unsettled (or unchallenged) issue of state law" and (2) "a possibility that the state law determination will moot or in some other way eliminate the constitutional issue." *Id.*

ASI argues that, based upon principles of comity and judicial economy, when a state court has a proceeding pending before it to determine the validity of a state statute, a federal court should abstain from deciding the matter until the state court has considered the statute in question. *Pullman*, 312 U.S. at 496. ASI also points out that the Supreme Court has determined that state courts should have the "last word" on interpreting a state statute. *Id.* at 499. Plaintiff argues, however, that because there is no federal constitutional issue before this Court, the *Pullman* abstention doctrine is inapposite to this case.

The Court finds that the *Pullman* abstention doctrine does not apply to the case sub judice because there is no federal constitutional issue before the Court. Accordingly, the Court declines to abstain from exercising jurisdiction over this case. *Ada-Cascade Watch Co. v. Cascade Resource Recovery, Inc.*, 720 F.2d 897, 920 (6th Cir. 1983) (holding, in part, that

-10-

because no federal constitutional issue "could be presented in a different posture," the *Pullman* doctrine did not apply).

2.  <em>Burford</em> Abstention

Burford abstention is warranted "(1) when there are difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar; or (2) where the exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern."  *New Orleans Pub. Serv., Inc. v. Council of the City of New Orleans*, 491 U.S. 350, 361 (1989) (internal quotations and citations omitted); *cf. Ada-Cascade*,  720 F.2d at 903 (holding that the following two factors justify *Burford* abstention:  (1) "the presence of a complex state regulatory scheme which would be disrupted by federal court review" and (2) "the existence of a state-created forum with specialized competence in the particular area.") (citing *Burford*, 319 U.S. at 327, 332-33).

ASI claims that this Court should abstain from considering any challenge to the Order Appointing Conservator because the State of Ohio has a comprehensive scheme for the regulation of credit unions in place; Section 1733.361(A)(2) provides the sole and exclusive procedure to challenge an order appointing a conservator; and Section 1733.361(A)(2) confers exclusive jurisdiction over a challenge to an order appointing a conservator to the Court of Common Pleas of Franklin County.  Plaintiff argues that the *Burford* doctrine is inapplicable to this case because ASI fails to allege that an Ohio administrative agency is responsible for resolving the issue of whether ASI has statutory authority to act on behalf of UTCU, nor is there a process in place that provides for resolution of such an issue.

-11-

Although ASI avers that Ohio has a "comprehensive scheme" for the regulation of credit unions in place, it does not explain how Ohio's statutory provisions that govern the appointment of a conservator over a credit union necessarily create a "complex" regulatory scheme.  *See New Orleans Pub. Serv., Inc.*, 491 U.S. at 362 ("While *Burford* is concerned with protecting *complex* state administrative processes from undue federal influence, it does not require abstention whenever there exists such a process. . . .") (emphasis added).  Moreover, while it is true that Ohio law permits a credit union to commence a civil action, under specified conditions, exclusively in the Court of Common Pleas of Franklin County for an order to compel the superintendent of credit unions to remove the conservator, the Court is not persuaded that its resolution of Plaintiff's claims will disrupt the state's efforts to establish a coherent policy of credit union regulation.  Plaintiff does not attempt to secure removal of ASI in this action. Instead, he petitions the Court to enforce Sections 1761.06(A)(4), 1761.01(M), 1733.361(A)(1), and 1733.01(P) as written.  The Court of Common Pleas of Franklin County appears to have already adopted Plaintiff's arguments, at least with respect to Sections 1733.361(A)(1) and 1733.01(P).  *See United Tel. Credit Union v. Roberts*, No. 04-CVH-055436, at 7-8 (Franklin Cty. Ct. Comm. Pleas July 26, 2005) (considering the application of Sections 1733.361(A)(1) and 1733.01(P) and holding that Defendant Roberts lacked statutory authority to issue the Order Appointing Conservator).  Therefore, without the requisite showing of either of the factors that justify application of the *Burford* abstention doctrine, the Court finds that the doctrine does not apply in this case.

Based on the foregoing, because the Court holds that neither the *Pullman* nor *Burford* abstention doctrines apply in the case sub judice, the Court will now consider the merits of Plaintiff's Motions.

### B. ASI's Standing to Bring a Counterclaim against Plaintiff

Section 1733.361(B) of the Ohio Revised Code empowers a conservator to,

> (2) exercise, in the name and on behalf of the credit union, all the rights, powers, and authority of the officers, directors, and members of the credit union and may continue its business in whole or in part with a view to conserving its business and assets pending further disposition thereof as provided by law under the supervision of the superintendent and upon such limitations as are imposed by him;
> 
> . . . .
> 
> (5) bring or defend suits or proceedings in the name of the credit union under the direction and supervision of the superintendent.

As a threshold matter, Plaintiff argues that ASI cannot bring a claim against him unless it has statutory authority to do so, and that ASI has standing to sue him only if it satisfies the terms of Section 1733.361(B)(5) – the statute that ASI relies on in exercising its authority to file a counterclaim against Plaintiff. Plaintiff attacks ASI's standing to bring a counterclaim against him on the basis that ASI was not lawfully appointed UTCU's Conservator pursuant to OHIO REV. CODE §§ 1733.361(A)(1) and 1761.06(A)(4). Thus, Plaintiff contends that this Court should grant summary judgment in his favor and against ASI, and that the Court should dismiss ASI's Counterclaim in its entirety.

The Court first turns to the parties' statutory analyses as to whether ASI was lawfully appointed Conservator for UTCU, then it will address the Defendants' various other arguments

respecting Plaintiff's alleged waiver of any claim to assert that ASI lacks authority to bring a counterclaim, and Plaintiff's standing to challenge ASI's conservatorship appointment in this proceeding.

    1.  The Parties' Interpretations of the Statutory Scheme of the Ohio Credit Union Act

    *a.  Plaintiff's Statutory Analysis of OHIO REV. CODE §§ 1733.361(A)(1) and 1761.06(A)(4)*

At oral argument, Plaintiff urged this Court to first consider Section 1761.06(A)(4) because that section permits a credit union share guaranty corporation, such as ASI, to serve as a conservator of a credit union upon written order of the "superintendent of credit unions," and then examine Section 1733.361(A)(1), which authorizes the "superintendent of credit unions" to issue an order appointing a conservator under certain conditions.

With regard to the application of Section 1761.06(A)(4), Plaintiff does not dispute that ASI is a credit union share guaranty corporation organized, licensed, and existing pursuant to the provisions of Chapter 1761 of the Ohio Revised Code, but he argues that Section 1761.06(A)(4) only authorizes the "superintendent of credit unions" to order a credit union share guaranty corporation to "assume control" (serve as a conservator) of a credit union.  Plaintiff also points out that OHIO REV. CODE § 1761.01(M) provides the relevant definition of "superintendent of credit unions" for purposes of Chapter 1761, and that under Section 1761.01(M), the "superintendent of credit unions" is clearly defined as one individual – "the superintendent of the division of the division of financial institutions."  OHIO REV. CODE § 1761.01(M).  Plaintiff concludes that under Sections 1761.01(M) and 1761.06(A)(4), only Defendant O'Donnell, as the Superintendent of the Division of Financial Institutions, possessed authority to appoint ASI as

UTCU's conservator, and because he did not issue the Order Appointing Conservator, ASI's appointment was unlawful and therefore, ASI lacks standing to bring its Counterclaim.

Plaintiff makes a similar argument with respect to Section 1733.361(A)(1).  He asserts that Section 1733.361(A)(1) unequivocally states that only the "superintendent of credit unions" possesses the authority to appoint a conservator, and he undertakes an extensive analysis of the definition of "superintendent of credit unions," as that term is defined in OHIO REV. CODE § 1733.01(P).

###### b.  *ASI's Analysis of the Ohio Credit Union Act Statutory Landscape*

ASI claims that Plaintiff is incorrect in his assertion that Defendant Roberts, as the Acting Deputy Superintendent for Credit Unions, lacked authority to issue an order appointing a conservator for UTCU because he "ignores" the 1995 amendments to the statutory provisions of Chapter 1733 of the Ohio Revised Code (the "Ohio Credit Union Act").  (ASI's Mem. Opp'n at 20.)  ASI relies on the following statutory provisions to support its argument that the deputy superintendent for credit unions (sometimes referred to herein as the "deputy superintendent") has authority to order the appointment of a conservator:  Sections 1733.361(A)(1); 1733.01(P); 121.08(C)(1); 3.06(A); 1181.01; and 1733.32(A).

First, according to ASI, Section 1733.01(P) clarifies that "superintendent of credit unions" includes the "division of financial institutions," the "superintendent of the division of financial institutions of this state," or when the contexts requires, the "director of commerce." OHIO REV. CODE § 1733.01(P).  Second, ASI asserts that Section 121.08(C)(1) specifically vests all authority of the "superintendent of financial institutions" in the "division of financial institutions."  OHIO REV. CODE § 121.08(C)(1).  ASI also urges the Court to read Section

1733.361(A)(1) in conjunction with Sections 1733.01(P) and 121.08(C)(1).  According to ASI, these three statutory provisions reveal that the deputy superintendent for credit unions, who is included within the DFI, has the power to issue an order appointing a conservator in accordance with Section 1733.361(A)(1).

Third, ASI argues that, pursuant to Section 3.06(A), Defendant Roberts is statutorily authorized to perform the duties of his principal, Defendant O'Donnell.  Such duties would, at least according to ASI, include the issuance of orders appointing conservators pursuant to Section 1733.361(A)(1).[2]

Finally, ASI argues that because Section 1733.32(A)(2) empowers the deputy superintendent for credit unions to perform or exercise "other regulatory functions, powers, or duties vested by division (A)(2)," the authority to issue an order appointing a conservator falls within the realm of the deputy superintendent's duties, responsibilities, and/or authority, especially in light of Sections 1733.361(A)(1), 1733.01(P), 1181.01, and 1733.32(A).

---

[2]ASI cites Section 1181.01 to demonstrate that the superintendent of financial institutions is obligated to appoint a deputy superintendent for credit unions.  Section 1181.01 states as follows:

> The superintendent shall appoint a deputy superintendent for banks, a deputy superintendent for savings and loan associations and savings banks, and a deputy superintendent for credit unions. Each deputy superintendent shall have at least five years of experience in that particular industry or at least five years of experience in the examination or regulation of banks, savings and loan associations, savings banks, or credit unions.

OHIO REV. CODE § 1181.01.

-16-

*c.  The State Defendants' Interpretations of Ohio Rev. Code §§ 121.08(C)(1); 1181.01; and*
*1733.32 and Their Argument as to How to Properly Interpret the 1995 Reorganization of*
*Chapter 1733 of the Ohio Revised Code[3]*

The State Defendants also argue that Plaintiff's interpretation of the term "superintendent

of credit unions" ignores the 1995 Amendments to the Ohio Credit Union Act.  Because the State

---

[3]At this juncture, the Court deems it necessary to address Plaintiff's Motion to Strike the Affidavit of John F. Kozlowski and Opposition to the Ohio Credit Union League's Motion for Leave to File an Amicus Curiae Brief.  The focus of Plaintiff's motion is two-fold.  First, in that motion, Plaintiff petitions this Court to strike the Kozlowski Affidavit and the portions of the State Defendants' Memorandum in Opposition that rely on the affidavit.  Second, Plaintiff requests that this Court deny the Ohio Credit Union League ("OCUL")'s Motion for Leave to File Amicus Brief.

With respect to Plaintiff's request that this Court strike the Kozlowski Affidavit, in addition to portions of the State Defendants' Memorandum in Opposition that rely on the affidavit, namely pages 4 through 7 of the Memorandum in Opposition, Plaintiff's Motion is **DENIED**.  The Court declines to strike the Kozlowski Affidavit and references to the affidavit in the State Defendants' Memorandum in Opposition because the Court determines that it does not need to rely on the affidavit in rendering a decision in this case.

Plaintiff's request that the Court deny OCUL's Motion for Leave to File an Amicus Curiae Brief is well-taken, and said motion is hereby **GRANTED**.  OCUL petitions this Court for leave to file an amicus brief pursuant to the Court's inherent authority, and Rule 7(b) of the Federal Rules of Civil Procedure, which governs the appropriate procedure for filing motions with the Court.  Plaintiff objects to OCUL's amicus brief on the following grounds: (1) all parties have not consented to the filing of an amicus brief; (2) OCUL has not shown that it has a "special interest," and thus, should be permitted to file an amicus brief; (3) OCUL does not argue that Defendants' counsel does not adequately represent their clients' interests; and (4) OCUL's brief introduces "new (irrelevant)" facts into the summary judgment record.  (Pl.'s Mot. to Strike at 4-5.)

Although the Court has examined OCUL's motion and accompanying amicus brief, counsel for ASI and the State Defendants have more than adequately briefed the issues before the Court, the State Defendants have already filed the Kozlowski Affidavit, which OCUL relies upon heavily in its proposed amicus brief, OCUL has not articulated a special interest in some other case that may be affected by this Court's determinations in the case sub judice, and all parties have not consented to OCUL's filing of an amicus brief.  *Dow Chemical Co. v. United States*, No. 00-CV-10331-BC, 2002 U.S. Dist,. LEXIS 11657, at *3 (E.D. Mich. May 24, 2002 (citing *Ryan v. Commodity Futures Trade Comm'n*, 125 F.3d 1062, 1063 (7th Cir. 1997)).  Hence, the Court determines that OCUL's amicus brief is not necessary to the Court's consideration and determination of the issues before it.

Defendants largely concur with ASI's statutory analysis, the Court summarizes only the State Defendants' arguments ASI has not previously raised.

First, in discussing the application of Section 121.08(C)(1), the State Defendants claim that contrary to Plaintiff's assertion, all powers and duties of the superintendent of financial institutions are vested in DFI, and that the General Assembly's vesting of power in DFI is not limited to non-discretionary powers.

Second, the State Defendants emphasize that while Section 1733.32(A)(2) designates the deputy superintendent for credit unions as the "principal supervisor of credit unions," the provision also imposes limits on his power in that the deputy superintendent is subject to the control of the superintendent of financial institutions.  OHIO REV. CODE § 1733.32(A)(2).

  2.  Defendant Roberts Lacked Statutory Authority to Issue the Order Appointing Conservator[4]

In *State ex rel., Francis v. Sours*, 53 N.E.2d 1021 (Ohio 1944), the Supreme Court of Ohio proclaimed that "[t]he polestar of construction and interpretation of statutory language is legislative intention."  *Id*. at 1023.  Under Ohio law, a court must first examine the language of the statute itself to determine the legislative intent.  *Provident Bank v. Wood*, 304 N.E.2d 378, 381 (Ohio 1973) (citing *Katz v. Dep't of Liquor Control*, 141 N.E.2d 294 (Ohio 1957)).  Upon examining the language of the statute, if the court determines that the statute conveys a meaning which is "clear, unequivocal and definite, at that point the interpretive effort is at an end, and the

_____

[4]In *United Tel. Credit Union v. Roberts*, Judge Reece holds, at least implicitly, that under Sections 1733.361(A)(1) and 1733.01(P), only the superintendent of credit unions, Defendant O'Donnell in this case, has the statutory authority to issue an order appointing a conservator. *Roberts*, No. 04-055436, at 7-8 (Franklin Cty. Ct. Comm. Pleas July 26, 2005).  Nothing in Judge Reece's July 26th Opinion suggests that matters and issues related to Chapter 1761 of the Ohio Revised Code were before him.  This Court agrees with Judge Reece's determination with respect to Sections 1733.361(A)(1) and 1733.01(P), and sets forth herein its statutory analysis supporting the holding in this case.

-18-

statute must be applied accordingly." *Id.* (citation omitted); *see also Cline v. Ohio Bureau of Motor Vehicles*, 573 N.E.2d 77, 80 (Ohio 1991) (holding that where statutory language "is plain and unambiguous and conveys a clear and definite meaning, there is no need to apply rules of statutory interpretation.") (citations omitted).  Thus, if the statutory language evinces "clear" legislative intent, the court need not look any further.  *Wood*, 304 N.E.2d at 381. (citation omitted).

Ohio courts are permitted to interpret a statute "only where the words of the statute are ambiguous." *State v. Jordan*, 733 N.E.2d 601, 605 (Ohio 2000) (citing *State ex rel. Celebrezze v. Allen County Bd. of Commrs.*, 512 N.E.2d 332, 335 (Ohio 1987)).  A statute is ambiguous "if the language is susceptible of more than one reasonable interpretation." *Id.* (citation omitted). Upon a determination that the statute is ambiguous, the court may glean the intent of the Ohio General Assembly by considering a number of factors. *Id.*  Section 1.49 of the Ohio Revised Code instructs an Ohio court on what to consider in determining legislative intent once a court makes a threshold determination that a statute is ambiguous.  An Ohio court may consider the following, "among other matters":  (1) the object sought to be obtained; (2) the circumstances under which the statute was enacted; (3) the legislative history; (4) the common law or former statutory provisions, including laws upon the same or similar subjects; (5) the consequences of a particular construction; and (6) the administrative construction of the statute.  OHIO REV. CODE § 1.49.

Because ASI is a credit union share guaranty corporation, this Court's analysis begins with Section 1761.06(A)(4).  (ASI's Countercl. ¶ 1.)  Under Section 1761.06(A)(4), a credit union share guaranty corporation, *inter alia*, "may assume control of the property and business

-19-

of any participating credit union and operate it at the direction of the superintendent until its

financial stability has been reestablished." OHIO REV. CODE § 1761.06(A)(4).  Such a

corporation assumes control of a credit union's property and business "[u]pon written order of

the superintendent of credit unions."  OHIO REV. CODE § 1761.06(A)(4).  Section 1761.01(M)

defines the "superintendent of credit unions" as "the *superintendent* of the division of financial

institutions of this state."  OHIO REV. CODE § 1761.01(M) (emphasis added).  Thus, under

Section 1761.06(A)(4), and incorporating the definition of "superintendent of credit unions" as

provided in 1761.01(M), it is clear that the legislature intended for the superintendent of the

division of financial institutions, upon written order, to appoint a credit union share guaranty

corporation as a conservator.[5]  Because the statutory language of Section 1761.06(A)(4) is clear

and unambiguous, this Court need not, nor may it, apply Ohio's rules of statutory interpretation.

*Cline*, 573 N.E.2d at 80 (citations omitted).  Furthermore, in light of the fact that the statutory

language in Section 1761.06(A)(4) is unambiguous, this Court may not scrutinize the legislative

---

[5]At oral argument, Plaintiff contended, and the State Defendants conceded that under
Section 1761.06(A)(4), a credit union share guaranty corporation may be appointed as a
conservator for a credit union.  (Oral Argument Tr. of 6/6/05 at 41, 47.)  ASI asserted at oral
argument, however, that a credit union share guaranty corporation's ability to assume control of
the property and business of a credit union may or may not constitute a conservatorship, but such
language could refer to receiverships or liquidations.  (Oral Argument Tr. of 6/6/05 at 40.)  Yet,
ASI's argument is belied by its assertions in its Counterclaim.  In its Counterclaim, ASI not only
identifies itself as the Conservator for UTCU, but also it claims that it is a credit union share
guaranty corporation organized under Chapter 1761 of the Ohio Revised Code.  ASI further
describes its ability to assume control of the property and business of a "participating credit
union," and to operate a credit union until its financial stability is reestablished, pursuant to
Section 1761.06(A)(4).  (ASI's Countercl. ¶ 1.)  Essentially, in the introductory paragraphs of its
Counterclaim, ASI purports to lay the groundwork for why it, as a credit union share guaranty
corporation, has authority to serve as a conservator for a credit union.  ASI accomplishes this by
referencing its authority under Section 1761.06(A)(4), "to assume control of the property and
business of any participating credit union and operate it . . . until its financial stability has been
reestablished."  *Id*.  Therefore, the Court finds that ASI's argument that Section 1761.06(4) does
not necessarily contemplate a conservatorship lacks merit.

-20-

history of the statute to determine legislative intent.  *See Wood*, 304 N.E.2d at 381 ("'Where the language itself clearly expresses legislative intent, the courts need look no further.'") (quoting *Katz*, 141 N.E.2d at 296); *see also Paris Hill Ltd. P'ship v. Erb Lumber, Inc.*, 726 N.E.2d 1013, 1015 (Ohio Ct. App. 1998) (holding that because the statutory language was unambiguous, the court was required to apply the relevant statutory section "as written," and it could not "resort to other forms of statutory construction," such as examining legislative history to divine legislative intent).  Accordingly, the Court concludes that the Ohio General Assembly only intended for the superintendent of the division of financial institutions to appoint a credit union share guaranty corporation as a conservator for a participating credit union under Section 1761.06(A)(4).

While the Court acknowledges that Section 1733.361 generally governs the appointment of a conservator for a credit union, in light of Section 1761.06(A)(4), it does not appear to be the controlling statute for *who* may appoint a credit union share guaranty corporation as a conservator.  Under Ohio law, "specific statutory provisions prevail over conflicting general statutes."  *Trumbull County Bd. of Health v. Snyder*, 658 N.E.2d 783, 785 (Ohio 1996) (citing *Springdale v. CSX Ry. Corp.*, 627 N.E.2d 534, 537-38 (Ohio 1994)).  Hence, the Court finds that even if Sections 1761.06 and 1733.361 were in conflict with regard to who is empowered to appoint a conservator for a credit union, because Section 1761.06(A)(4) expressly addresses who may appoint a credit union share guaranty corporation as a conservator, and ASI is such a corporation, the Court finds that Section 1761.06(A)(4) necessarily overrides Section 1733.361.  Nevertheless, as the following analysis reveals, the Court does not find that Sections 1761.06 and 1733.361 are in conflict, and it determines that under Section 1733.361(A)(1), as with

Section 1761.06(A)(4), only the superintendent of the division of financial institutions may appoint a conservator for a participating credit union.

Section 1733.361(A)(1) states, in relevant part, "[t]he superintendent of credit unions may issue an order appointing a conservator for any credit union whenever he considers it necessary in order to conserve the assets of such credit union for members, depositors, and creditors." OHIO REV. CODE § 1733.361(A)(1). Section 1733.01(P) further defines "superintendent of credit unions" as:

> [T]he "division of financial institutions" *or* the "superintendent of the division of financial institutions of this state"; and whenever the context requires it, may be read as "director of commerce" or as "chief of the division of financial institutions." *Whenever the division or superintendent of credit unions is referred to or designated in any statute, rule, contract, or other document, the reference or designation shall be deemed to refer to the division or superintendent of financial institutions, as the case may be*.

OHIO REV. CODE § 1733.01(P) (emphasis added). Section 1733.361(A)(1) enables the "superintendent of credit unions" to issue an order appointing a conservator for a credit union when he determines that the imposition of a conservatorship is necessary to preserve the assets of a credit union. Under Section 1733.01(P), it is apparent that the "superintendent of credit unions" means either the actual superintendent of the division of financial institutions or the division of financial institutions. Section 1733.01(P) also clarifies that when either the division or superintendent of credit unions is "referred to or designated in any statute," such reference or designation must be interpreted as referring to the division or superintendent of financial institutions, "as the case may be." OHIO REV. CODE § 1733.01(P). Thus, Section 1733.361(A)(1) and the relevant the definition of "superintendent of credit unions" as provided in Section 1733.01(P) reveal the following: (1) the term "superintendent of credit unions" is referred to in

-22-

Section 1733.361(A)(1), and Section 1733.01(P) requires that the term be construed as the superintendent of financial institutions because the superintendent of credit unions, and not the division, is referred to in Section 1733.361(A)(1); and (2) the superintendent of financial institutions is the only individual who may issue an order appointing a conservator for a credit union.

Because the legislative intent is clear and unambiguous from the language of the Sections 1733.361(A)(1) and 1733.01(P), this Court will not consult the legislative history, or otherwise engage in statutory construction to determine legislative intent. *See Wood*, 304 N.E.2d at 381 ("'Where the language itself clearly expresses legislative intent, the courts need look no further.'") (quoting *Katz*, 141 N.E.2d at 296); *see also Paris Hill*, 726 N.E.2d at 1015) (holding that because the statutory language was unambiguous, the court was required to apply the relevant statutory section "as written," and it could not "resort to other forms of statutory construction," such as examining legislative history to divine legislative intent).

Contrary to the Defendants' assertions, Sections 121.08(C)(1) and 3.06(A) do not dictate a conclusion contrary to the Court's interpretation of Section 1733.361(A)(1), and the Court further finds that the Defendants' reliance on those sections is misplaced. Section 121.08(C)(1) provides as follows:

> (C) (1)  There is hereby created in the department of commerce a division of financial institutions, which shall have all powers and perform all duties vested by law in the superintendent of financial institutions.  Whenever powers are conferred or duties imposed upon the superintendent of financial institutions, those powers and duties  shall be construed as vested in the division of financial institutions.  The division of financial institutions shall be administered by a superintendent of financial institutions.

OHIO REV. CODE § 121.08(C)(1). Under this section, the Ohio General Assembly expresses an unequivocal intent for the division of financial institutions to possess all powers and perform all duties that are committed to the superintendent of financial institutions. Because legislative intent with regard to Section 121.08(C)(1) is clear, the statute must be applied "as written," and without "resort to other forms of statutory construction," such as the legislative history. *Paris Hill*, 726 N.E.2d at 1015.

The general conferral of power in Section 121.08(C)(1), however, is in conflict with the specific grant of power to the "superintendent of credit unions" to issue an order appointing conservator under Section 1733.361(A)(1). As explained above, although the term "superintendent of credit unions" means the "division of financial institutions" *or* the "superintendent of the division of financial institutions of this state," as defined in Section 1733.01(P), the last sentence of that section provides that if any statute refers to the superintendent of credit unions then that reference must be construed as a reference to the superintendent of financial institutions. Substituting the term "superintendent of financial institutions" for the term "superintendent of credit unions," as required in Section 1733.01(P), and applying Section 1733.361(A)(1), the legislature unequivocally authorized only the superintendent of financial institutions, and not the division of financial institutions to issue an order appointing a conservator under Section 1733.361(A)(1). Accordingly, this Court finds that Section 1733.361(A)(1)'s specific requirement that the superintendent of financial institutions, as opposed to the division of financial institutions, issue an order appointing a conservator prevails over Section 121.08(C)(1)'s general vesting of the superintendent of financial institutions' powers and duties in the division. *Synder*, 658 N.E.2d at 785.

-24-

ASI relies on Section 3.06(A) of the Ohio Revised Code to suggest that Defendant Roberts has authority to issue an order appointing a conservator.[6] Section 3.06(A) provides, in relevant part, "A deputy, when duly qualified, may perform any duties of his principal." OHIO REV. CODE § 3.06(A). ASI does not attempt to explain when a deputy is "duly qualified" and whether Defendant Roberts, in his capacity as Acting Deputy Superintendent for Credit Unions was "duly qualified" to issue the Order Appointing Conservator. The Court further finds this general authority of a "duly qualified" deputy to perform the duties of his principal conflicts with the specific grant of power to issue an order appointing a conservator, which belongs to the superintendent of financial institutions under Section 1733.361(A)(1). Additionally, there is no indication in Section 1733.361(A)(1) that the legislature intended for anyone other than the superintendent of financial institutions to issue an order appointing a conservator. Hence, the Court does not interpret Section 3.06(A) as providing the deputy superintendent for credit unions with the authority to issue an order appointing a conservator in accordance with Section 1733.361(A)(1). *Synder*, 658 N.E.2d at 785.

Defendants make one final attempt to persuade the Court that Defendant Roberts had statutory authority to issue the Order Appointing Conservator by reference to the duties and powers of the deputy superintendent for credit unions under OHIO REV. CODE § 1733.32(A)(2). Section 1733.32(A)(2) states as follows:

> (2) The deputy superintendent for credit unions shall be the principal supervisor of credit unions. In that position the deputy superintendent for credit

---

[6]The State Defendants also rely on OHIO REV. CODE § 3.06(A), but in the delegation context. Essentially, the State Defendants argue that Section 3.06(A) provided Defendant O'Donnell with statutory authority to delegate power to issue an order appointing a conservator to Defendant Roberts.

unions shall, notwithstanding division (A)(3) of this section, be responsible for conducting examinations and preparing examination reports under that division. In addition, the deputy superintendent for credit unions shall, notwithstanding sections 1733.191, 1733.41, 1733.411, and 1733.412 of the Revised Code, have the authority to adopt rules in accordance with those sections, and, notwithstanding section 1733.05 of the Revised Code, shall have the authority to approve issues and matters pertaining to fields of membership. In performing or exercising any of the examination, rule-making, or other regulatory functions, powers, or duties vested by division (A)(2) of this section in the deputy of superintendent for credit unions, the deputy superintendent for credit unions shall be subject to the control of the superintendent of financial institutions.

OHIO REV. CODE § 1733.32(A)(2).

Under this section, the legislature stated in unambiguous terms that the deputy superintendent for credit unions is the principal supervisor of credit unions. In serving in this capacity, Section 1733.32(A)(2) empowers the deputy superintendent to exercise rule-making and examination powers, and "other regulatory" functions, powers, or duties, as provided in Section 1733.32(A)(2), and all under the "control of the superintendent of financial institutions." OHIO REV. CODE § 1733.32(A)(2). Section 1733.32(A)(2), however, does not specifically state that the deputy superintendent has authority to issue an order appointing a conservator. ASI argues that Section 1733.32(A)(2) only lists *some* of the duties, responsibilities, and authority of the deputy superintendent, and hence, it does not contain an exhaustive list of such duties, responsibilities, and authority committed to the deputy superintendent. ASI further intimates that the clause of Section 1733.32(A)(2) that permits the deputy superintendent to perform or exercise "other regulatory functions, powers, or duties vested by division (A)(2)," confers authority upon the deputy superintendent for credit unions to issue an order appointing a conservator under Section 1733.361(A)(1). Yet, ASI cannot point to a single clause within Section 1733.32(A)(2) which expressly confers such authority upon the deputy superintendent to

-26-

issue an order appointing a conservator.  Without more, the Court will not construe Section 1733.32(A)(2) as authorizing the deputy superintendent for credit unions to issue an order appointing a conservator.

The State Defendants also argue that Section 1733.32(A)(2) serves as a source of the deputy superintendent's authority to issue an order appointing a conservator.  The State Defendants rely on the affidavit of John F. Kozlowski to argue that the deputy superintendent possesses all of the powers of the superintendent of credit unions, including the authority to issue an order appointing a conservator, as that position existed before the 1995 Amendments.  Yet, this is the view taken by the Ohio Credit Union League, and it is not expressly provided for within the language of Section 1733.32(A)(2).  Also, the State Defendants do not argue that any portion of Section 1733.32(A)(2) is ambiguous, which would necessitate an examination of the legislative history.  Therefore, the Court finds that Section 1733.32(A)(2) does not authorize the deputy superintendent for credit unions to issue an order appointing a conservator in accordance with Section 1733.361(A)(1).

Based on the foregoing, the Court holds that Defendant Roberts did not have statutory authority to issue an order appointing a conservator because OHIO REV. CODE § 1761.06(A)(4) expressly authorizes only the superintendent of the division of financial institutions to appoint a conservator, and likewise Section 1733.361(A)(1) expressly authorizes only the superintendent of credit unions – the superintendent of financial institutions – to issue such an order.[7]

---

[7]Because the Court determines that Defendant Roberts did not have statutory authority to issue the Order Appointing Conservator, it deems it unnecessary to consider Plaintiff's arguments respecting Judge Brunner's previous findings in related litigation.

3. Defendant ASI's Assertions Respecting *Morgan v. Hughes* and Plaintiff's Alleged Waiver of any Claim that ASI Lacks Authority to Assert the Counterclaim

ASI argues that Plaintiff's attack on ASI's standing to bring a counterclaim fails for two additional reasons.  First, ASI points to a Cuyahoga County Court of Appeals decision involving litigation concerning Martin Hughes in which, according to ASI, the court held that Section 1733.361 gives ASI, as Conservator for UTCU, the sole and exclusive authority to exercise all rights, powers, and authority of the officers, directors, and members of UTCU.  *See Morgan v. Hughes*, No. 082916, 2004 Ohio App. LEXIS 629, at *4 (Ohio Ct. App. Feb. 12, 2004).  Thus, ASI suggests the issue of the propriety of its appointment has already been settled by an Ohio appellate court, and it claims it has authority under Section 1733.361(B) to bring or defend suits or proceedings in UTCU's name.  Second, ASI claims that because Plaintiff asserts ERISA claims against it, in its capacity as Conservator for UTCU and as an ERISA "plan administrator," and Plaintiff is seeking equitable relief pursuant to ERISA Section 502(a)(3), Plaintiff has effectively waived any claims that ASI lacks authority to assert a counterclaim in this case.[8]

In his Reply, Plaintiff argues that at no time has he acknowledged that ASI may act on behalf of UTCU, or consented to ASI's role as an ERISA plans administrator.  Plaintiff points to numerous allegations in his Complaint that expressly challenge ASI's conservatorship appointment.  According to Plaintiff, his allegations concerning the legitimacy of ASI's conservatorship appointment demonstrate he has not relinquished any right to challenge ASI's power to act on behalf of UTCU, but he has preserved his right to challenge ASI's appointment

---

[8]In the case sub judice, ASI's counterclaim against Plaintiff consists of the following claims:  forfeiture, mitigation, restitution, set-off, and recoupment in the event that this Court finds that Martin Hughes is entitled to employee benefits under ERISA.

through such allegations.  Finally, Plaintiff contends that by asserting a counterclaim, ASI has

"put its own authority to sue and act on UTCU's behalf squarely at issue."  (Pl.'s Reply Mem. at

19.)

### a.  The Applicability of Morgan v. Hughes to this Case

At the outset, the Court notes that *Morgan* is of limited application to the case sub judice

because in *Morgan* there was no dispute between the parties concerning the issue of ASI's

lawful  appointment as Conservator for UTCU under Section 1733.361(A)(1); instead, the focus

of that action concerned Martin Hughes' authority to bind UTCU in a settlement agreement after

ASI was appointed Conservator.  *See Morgan*, 2004 Ohio App. LEXIS 629, at *8, 10 (stating

"[t]he parties do not dispute that the superintendent lawfully appointed the Conservator [ASI] for

UTCU on February 24, 2003," and holding that because the settlement agreement at issue was

executed after ASI was appointed Conservator for UTCU, "only the Conservator possessed the

authority to execute this written agreement on behalf of UTCU").  The Court further notes that,

at oral argument, counsel for Plaintiff argued that he did not have the opportunity to challenge

ASI's appointment as Conservator in the appellate proceeding in *Morgan* because at that point it

was understood that only the Court of Common Pleas of Franklin County has exclusive

jurisdiction to remove a conservator, and Plaintiff had already filed an action to remove ASI in

the appropriate court.  (Oral Argument Tr. of 6/6/05 at 11-12.)  Neither ASI nor the State

Defendants challenged Plaintiff's counsel's assertion at oral argument.  Furthermore, the record

does not reflect that the *Morgan* court considered whether Section 1761.06(A)(4) had any effect

upon whether ASI was lawfully appointed Conservator for UTCU – an inquiry which is central

to this Court's analysis.  Therefore, the Court does not interpret the *Morgan* court's finding that

ASI was lawfully appointed Conservator of UTCU dispositive of Plaintiff's challenges to ASI's conservatorship appointment in this case.

### b. Waiver

The Court finds unavailing ASI's argument that by asserting ERISA claims against ASI, Plaintiff has waived any right to challenge the legality of ASI's conservatorship appointment. Waiver entails the "voluntary relinquishment of a known right." *State ex rel. Wallace v. State Med. Bd.*, 732 N.E.2d 960, 965 (Ohio 2000). Furthermore, the doctrine of waiver is generally applicable to all personal rights and privileges even when such rights are contractual, statutory, or constitutional. *State ex rel. Athens Cty. Bd. of Comm'rs v. Gallia, Jackson, Meigs, Vinton Joint Solid Waste Mgt. Dist. Bd. of Directors*, 665 N.E.2d 202, 207 (Ohio 1996).

Section 1733.361(B)(5) of the Ohio Revised Code authorizes a conservator for a credit union to "bring or defend suits or proceedings in the name of the credit union under the direction and supervision of the superintendent." OHIO REV. CODE § 1733.361(B)(5). Yet, implicit in a conservator's ability to bring or defend suits in the name of the credit union, is the conservator's lawful or proper appointment in accordance with Ohio law. Although Plaintiff has sued ASI in its capacity as Conservator, the Court finds that Plaintiff has not waived any right to challenge the legality of ASI's appointment because only a properly appointed conservator may exercise the authority and rights bestowed by Section 1733.361(B)(5). Additionally, Plaintiff has vehemently opposed ASI's conservatorship appointment from the inception of this case, even before he fully articulated ERISA claims against ASI. In sum, if ASI was never lawfully appointed Conservator, then it does not possess authority to bring or defend suits on behalf of UTCU pursuant to Section 1733.361(B)(5). Plaintiff's election to sue ASI for alleged ERISA

-30-

violations, in its capacity as Conservator, does not obviate the need for the superintendent of credit unions to lawfully appoint a conservator.

4.  Whether Plaintiff Acquiesced to Defendant Roberts' Appointment of a Conservator

The State Defendants also argue that Plaintiff acquiesced or essentially waived his right to challenge the appointment of ASI as Conservator for UTCU.  In the Supervisory Agreement that Martin Hughes entered into with the State of Ohio Department of Commerce, DFI, and ASI on July 18, 2002, the State Defendants maintain that Martin Hughes, in addition to all other UTCU directors who were signatories to the agreement, understood that Defendant Roberts would be able to take control of UTCU's affairs when necessary, to ensure the "safe and sound operation" of the credit union.  (State Defs.' Mem. Opp'n at 15.)  Paragraph 19 of the agreement states as follows:

> If the Division or Insurer [ASI] determines that the Credit Union is not operating in complete compliance with each provision of this agreement, the Acting Deputy Superintendent [for] Credit Unions may at his discretion, take whatever action is necessary to assure the safe and sound operation of the Credit Union, including, but not limited to the removal of management and the Board of Directors, the appointment of a Manager-Trustee, or suspension or liquidation of the Credit Union.

Supervisory Agreement at 7, ¶ 19.  Based upon this language, the State Defendants argue that because the parties to that agreement contemplated that Defendant Roberts could appoint a conservator for UTCU, Plaintiff cannot now challenge the appointment of ASI on the grounds that Defendant Roberts lacked authority to issue the Order Appointing Conservator.

Plaintiff responds that the State Defendants' acquiescence argument fails for the following reasons.  First, the Supervisory Agreement is not binding upon Martin Hughes in his individual capacity because he signed the agreement in his capacity as an officer and director of

-31-

UTCU. Second, Plaintiff argues that the agreement does not authorize the appointment of a conservator, or permit the acting deputy superintendent for credit unions to issue unlawful orders, namely an order appointing a conservator.[9] Third, according to Plaintiff, Defendant Roberts, who originally prepared and drafted the Supervisory Agreement, also modified the agreement by adding the following handwritten modification: "By entering into this Agreement, no party waives any legal or equitable right." Supervisory Agreement at 8, ¶ 24; *see also* Roberts' Dep. 66:15-70:11 (stating that he had written the aforementioned words and that they formed part of the Supervisory Agreement). Finally, Plaintiff contends that even if the Supervisory Agreement did provide Defendants Roberts with the power to appoint a conservator, it did not grant the authority to ASI to serve as Conservator because under Sections 1761.06(A)(4) and 1761.01(M), credit union share guaranty corporations may serve as conservators only upon the written order of the "superintendent of the division of financial institutions." OHIO REV. CODE §§ 1761.06(A)(4), 1761.01(M).

Plaintiff's argument that he did not acquiesce or otherwise waive his ability to challenge the legality of ASI's appointment as conservator is well-taken. First, even if the Supervisory Agreement is construed broadly to permit the acting deputy superintendent for credit unions to issue an order appointing a conservator, as the Court has previously determined, the authority to issue an order appointing a conservator belongs solely to the superintendent of credit unions under Sections 1733.361(A)(1) and 1761.06(A)(4). Second, the State Defendants' contention that Plaintiff acquiesced or otherwise waived a right to challenge the conservatorship

---

[9]According to Plaintiff, the appointment of a Manager-Trustee is not the same as the appointment of a conservator, because the conservator receives "full control of the credit union's affairs." (Pl.'s Reply Mem. at 17-18.)

appointment is contrary to Defendant Robert's handwritten modification to the Supervisory Agreement, which provides that no party waives a legal or equitable right by entering into the Supervisory Agreement.  Finally, Martin Hughes signed the agreement in his capacity as officer and director of UTCU, and the State Defendants do not argue that Hughes may be individually bound by the terms of the Supervisory Agreement.

### 5.  Section 1733.361(A)(2) Analysis

#### a.  Arguments of the Parties

ASI argues that because only a credit union may seek an order to remove a conservator under conditions specified in OHIO REV. CODE § 1733.361(A)(2), Plaintiff does not have standing to challenge the order appointing ASI as UTCU's Conservator, and he cannot maintain an action pursuant to Section 1733.361(A)(2).  Furthermore, relying on federal jurisprudence, and Ohio law with respect to receivers, guardians, and administrators, ASI claims that Plaintiff makes an impermissible collateral attack on the appointment of it as Conservator.  Finally, ASI asserts that the Franklin County Court of Common Pleas has exclusive subject matter jurisdiction over a Section 1733.361(A)(2) challenge, and therefore, Plaintiff's Section 1733.361(A)(2) challenge in this Court is not cognizable.

Like ASI, the State Defendants style the action pending before this Court as a collateral attack on the validity of ASI's appointment.  They assert five arguments respecting Plaintiff's inability to challenge the validity of ASI's conservatorship appointment in this case.  First, the State Defendants claim this action is not justiciable in this Court because Plaintiff brings a state law claim within the exclusive province of the Franklin County Court of Common Pleas.  Second, according to the State Defendants, because UTCU voluntary dismissed its initial Section

1733.361(A)(2) action, the appointment of ASI as Conservator is incontestable on state law grounds.[10]  Third, Plaintiff's Section 1733.361(A)(2) challenge is not timely brought.  Fourth, Martin Hughes is not the proper party to bring a Section 1733.361(A)(2) action.  Finally, the State Defendants also claim that a single former director of UTCU lacks standing to attack the appointment of a conservator for failure to comply with state law.

Plaintiff argues that he does not seek an order compelling the superintendent of the division of financial institutions to remove ASI in the action before this Court.  Instead, Plaintiff petitions this Court to dismiss ASI's counterclaim because ASI was unlawfully appointed as Conservator for UTCU; therefore, ASI lacks standing to bring its Counterclaim, and it does not have authority to control the ERISA plans at issue.  Plaintiff also argues that even if he were seeking removal of ASI in this action, there was never a valid order appointing a conservator which would trigger the statutory thirty-day period under Section 1733.361(A)(2).  According to Plaintiff, the Order Appointing Conservator was never valid because it was not signed by the superintendent of credit unions in accordance with Sections 1733.361(A)(1) and 1761.06(A)(4).

### b.  Defendants' Section 1733.361(A)(2) Arguments Lack Merit

The Court finds Defendants' contentions unavailing for two reasons.  First, by Plaintiff's own admission, he is not seeking removal of ASI as Conservator in this action, thus Defendants arguments to the contrary are without merit.  Even if Plaintiff were seeking such a removal in this action, Section 1733.361(A)(1) expressly authorizes <u>only</u> the Court of Common Pleas of

---

[10]The Court notes that on July 2, 2005, the Franklin County Court of Common Pleas determined that Ohio's Saving Statute saved UTCU's second filed Section 1733.361(A)(2) action.  *United Tel. Credit Union v. Roberts*, No. 04-CVH-055436 (Franklin Cty. Ct. Comm. Pleas July 26, 2005).  Furthermore, the *Roberts* court decided in favor of UTCU's with respect to its Section 1733.361(A)(2) action.

Franklin County to issue an order compelling the superintendent to remove the conservator. OHIO REV. CODE § 1733.361(A)(2).[11]

Second, the Court further finds that Defendants read Section 1733.361(A)(2) too broadly. While it is clear from that statute that the Court of Common Pleas of Franklin County has jurisdiction to issue an order compelling the superintendent to remove the conservator, Section 1733.361(A)(2) does not confer exclusive jurisdiction on the Court of Common Pleas of Franklin County to hear every conceivable challenge to the propriety or legality of a conservatorship appointment. Therefore, even if Plaintiff's claims are "in substance and effect, a claim that the appointment of ASI as conservator of UTCU is invalid," as the State Defendants argue, this Court's conclusion that ASI's appointment is invalid would not give the Court authority to issue an order compelling the superintendent of credit unions to remove ASI as conservator of UTCU. (State Defs.' Mem. Opp'n at 14.) That authority belongs entirely to the Court of Common Pleas of Franklin County.

For the above reasons, Defendants' waiver and Section 1733.361(A)(2) arguments fail as a matter of law.

### C. Defendant O'Donnell's Purported Delegation and Ratification

Finally, Plaintiff argues that neither Defendant O'Donnell's purported delegation of authority to Defendant Roberts concerning the appointment of ASI as Conservator nor his ratification of Defendant Roberts' appointment of ASI on two occasions, could legitimize the Order Appointing Conservator. In light of Judge Reece's July 26, 2005 decision in *Roberts*,

---

[11]Section 1733.361(A)(2) provides, in pertinent part, "Within thirty days after the date of the order of appointment of a conservator, the credit union may commence a civil action in the court of common pleas of Franklin county to obtain an order compelling the superintendent to remove the conservator." OHIO REV. CODE § 1733.361(A)(2).

which directly addressed identical delegation and ratification issues presently before this Court, and this Court's interest in effectuating principles of comity, the Court defers to the state court's holdings on the delegation and ratification issues.

In *Roberts*, the court held that the delegation of authority that requires the exercise of judgment and discretion must be expressly conferred by statute, and the superintendent of credit unions, which has judgment and discretion to appoint a conservator does not have express statutory authority to delegate the authority to appoint a conservator.  *See Roberts*, No. 04-CVH-055436, at 8 (relying on 1982 Ohio Op. Att'y Gen. No. 82-019; 1982 Ohio Op. Att'y Gen. No. 82-048; 1981 Ohio Op. Att'y Gen. No. 81-074; 1977 Ohio Op. Att'y Gen. No. 77-064). Accordingly, the state court held that Defendant Roberts did not have statutory authority to issue the Order Appointing Conservator.  *Id*.  Furthermore, the court held that because the Order Appointing Conservator is void, it is incapable of being ratified.  *See id*. at 9 (holding "[b]ecause the Court finds that Defendant Roberts had no statutory authority to sign the Order Appointing Conservator, said Order is void on its face, has no legal effect and is incapable of being ratified").  Therefore, this Court agrees with the state court's ruling and it hereby its holding with respect to the delegation and ratification issues.

## V.  CONCLUSION

For the above reasons, Plaintiff's Motion for Partial Summary Judgment is **GRANTED** in its entirety because ASI was never properly appointed Conservator for UTCU.  Likewise, Plaintiff's Motion to Dismiss is **GRANTED** because ASI lacks standing to bring a counterclaim against Plaintiff on behalf of UTCU since it was never the properly appointed Conservator of the credit union.

**IT IS SO ORDERED.**

      s/ Algenon L. Marbley_____
**ALGENON L. MARBLEY**
**UNITED STATES DISTRICT JUDGE**


**DATED: September 23, 2005**